IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**1:19 MJ 2085**

I, Charles Sullivan, a Special Agent (S.A.) of the Federal Bureau of Investigation (F.B.I.), United States Department of Justice (D.O.J.), hereinafter referred to as Affiant, being duly sworn under oath, hereby deposes and states as follows:

## INTRODUCTION

1. Affiant is an investigative or law enforcement officer of the United States of America within the meaning of Title 18, U.S.C. §2510(7) and the Federal Rules of Criminal Procedure, Rule 41(a)(2)(C). Affiant is empowered to conduct investigations of and to make arrests for offenses enumerated in Title 18, U.S.C. §§ 3052 and 3107; and D.O.J. regulations set forth at Title 28, C.F.R., Sections 0.85 and 60.2(a).

2. Affiant has been employed as a Special Agent of the F.B.I. since February of 1998. While employed by the F.B.I., Affiant has investigated federal criminal violations related to bank robberies, drugs, weapons violations, interstate transportation of stolen property, cyber-crime, child exploitation, child pornography and other general criminal offenses in the Northern District of Ohio.

3. Affiant has gained experience through training, seminars, classes, and everyday work related to conducting these types of investigations. Affiant has received training in the area of child pornography and child exploitation and has had the opportunity to observe and review numerous examples of child pornography (as defined in Title 18, U.S.C. § 2256) in all forms of media including computer media. Moreover, Affiant is a federal law enforcement officer who is engaged in enforcing criminal laws, including Title 18, U.S.C. § 2252A.

4. Affiant submits this application and affidavit in support of a Complaint authorizing the arrest of Anthony V. Coladangelo for violating 18 U.S.C. § 2252(a)(2), Receipt and Distribution of Visual Depictions of Real Minors Engaged in Sexually Explicit Conduct.

5. The statements contained in this Affidavit are based in part on: information provided to me by other F.B.I. Special Agent(s), Investigator(s) at the Geauga County Prosecutor's office, Detective(s) at the Madison Township Police Department; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement officers; information gathered from the service of subpoenas; the results of physical and electronic surveillance conducted by law enforcement officers; independent investigation and analysis by F.B.I. Agents/Analysts and computer forensic professionals;

and my experience, training and background as a Special Agent of the F.B.I. Since this affidavit is being submitted for the limited purpose of securing authorization for the requested Complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause for the Complaint.

### STATUTORY AUTHORITY

6. This Complaint concerns violations of Title 18, United States Code, Section 2252(a)(2) that prohibits a person from knowingly receiving or distributing any child pornography, as defined in 18 U.S.C. § 2256(8), when such child pornography was either mailed or, using any means or facility of interstate or foreign commerce, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce.

### P2P FILE-SHARING

7. P2P file-sharing allows individuals to meet each other through the Internet, engaged in social networking, and trade files.

8. P2P file sharing is a method of communication available to Internet users through the use of special computer

3

software. Computers are linked together through the Internet on this network and by using this software allows for the sharing of digital files between users on the network. A user first obtains the P2P computer software, which can be downloaded from the Internet. In general, P2P computer software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software.

9. One aspect of P2P file-sharing is that multiple files may be downloaded in parallel, which permits downloading more than one file at a time. The software utilized by the F.B.I. to download files from P2P networks will only download from a single source via a direct connection to that computer.

10. A P2P file transfer is assisted by reference to an Internet Protocol (IP) address. This address, expressed as four sets of numbers separated by decimal points, is unique to a particular computer during an online session. The IP address identifies the location of the computer with which the address is associated, making it possible for data to be transferred between computers.

11. The computer running the file sharing application, in this case a Bit Torrent application, has an IP address assigned to it while it was connected to the Internet. Bit Torrent users are able to see the IP address of any computer system sharing files with them or receiving files from them.

12. Third-party software is available to identify the IP address of the P2P computer sending a file. Such software monitors and logs Internet and local network traffic.

13. The BitTorrent network can be accessed by peer/client computers via many different BitTorrent network client (software) programs, examples of which include: the BitTorrent client program; uTorrent client program; and Vuze client program, among others. These client programs are publically available and typically free P2P client software programs that can be downloaded from the Internet.

14 During the installation of typical BitTorrent network client programs, various settings are established which configure the host computer to share files via automatic uploading. Typically, as users download files or pieces of files from other peers/clients on the BitTorrent network, other users (peers/clients) on the network are able to download the files or pieces of files from them, a process which maximizes the download speeds for all users on the network. Once a user has completed the download of an entire file or files, they can also continue to share the file with individuals on the BitTorrent network who are attempting to download all pieces of the file or files, a process referred to as "seeding".

15. Files or sets of files are shared on the BitTorrent network via the use of "Torrents". A "Torrent" is typically a

small file that describes the file(s) to be shared. It is important to note that a "Torrent" does not contain the actual file(s) to be shared, but information about the file(s) to be shared needed to accomplish a download. This information includes things such as the name(s) of the file(s) being referenced in the "Torrent" and the "info hash" of the "Torrent". The "info hash" is a SHA-1 hash value of the set of data describing the file(s) referenced in the "Torrent". This set of data includes the SHA-1 hash value of each file piece in the torrent, the file size(s), and the file name(s). The "info hash" of each "Torrent" uniquely identifies the "Torrent" on the BitTorrent network. The "Torrent" may also contain information on how to locate file(s) referenced in the "Torrent" by identifying "Trackers". "Trackers" are computers on the BitTorrent network that collate information about the peers/clients that have recently reported they are sharing the file(s) referenced in the "Torrent" file. A "Tracker" is only a pointer to peers/clients on the network who may be sharing part or all of the file(s) referenced in the "Torrent". "Trackers" do not actually have the file(s) but are used to facilitate the finding of other peers/clients that have the entire file(s) or at least a portion of the file(s) available for sharing. It should also be noted that the use of "Tracker(s)" on the BitTorrent network are not always necessary to locate

6

peers/clients that have file(s) being shared from a particular "Torrent." There are many publically available servers on the Internet that provide BitTorrent tracker services.

16. In order to locate "Torrents" of interest and download the files that they describe, a typical user will use keyword searches on torrent indexing websites, examples of which include *isohhunt.com* and the *piratebay.org*. Torrent indexing websites are essentially search engines that users on the BitTorrent network use to locate "Torrents" that describe the files they are looking to download. Torrent indexing websites do not actually host the content (files) described by "Torrents", only the "Torrent" themselves. Once a "Torrent" is located on the website that meets a user's keyword search criteria, the user will download the "Torrent" to their computer. The BitTorrent network client program on the user's computer will then process that "Torrent" in order to find "Trackers" or utilize other means that will help facilitate finding other peers/clients on the network that have all or part of the file(s) referenced in the "Torrent." It is again important to note that the actual file(s) referenced in the "Torrent" are actually obtained directly from other peers/clients on the BitTorrent network and not the "Trackers" themselves. Typically, the "Trackers" on the network return information about remote peers/clients that have recently reported they have the same

7

file(s) available for sharing (based on SHA-1 "info hash" value comparison), or parts of the same file(s), referenced in the "Torrent", to include the remote peers/clients Internet Protocol (IP) addresses.

17. For example, a person interested in obtaining child pornographic images or videos on the BitTorrent network can go to a torrent indexing website and conduct a keyword search using a term such as "preteen sex" or "pthc" (pre-teen hardcore). The results of the keyword search are typically returned to the user's computer by displaying them on the torrent indexing website. Based on the results of the keyword search, the user would then select a "Torrent" of interest to them to download to their computer from the website. Typically, the BitTorrent client program will then process the "Torrent." Utilizing trackers and other BitTorrent network protocols, peers/clients are located that have recently reported they have the file(s) or parts of the file(s) referenced in the "Torrent" file available for sharing. The file or files are then downloaded directly from the computer(s) sharing the file or files. Typically, once the BitTorrent network client has downloaded part of a file or files, it may immediately begin sharing the part of the file or files it has with other users on the network. The BitTorrent network client program succeeds in reassembling the file(s) from different sources only if it receives "pieces" with the exact

8

SHA-1 hash value of that piece which is described in the "Torrent." The downloaded file or files are then stored in an area (folder) previously designated by the user and/or the client program on the user's computer or designated external storage media. The downloaded file or files, including the torrent, will remain in that location until moved or deleted by the user.

18. Law Enforcement can search the BitTorrent network in order to locate individuals sharing previously identified child exploitation material in the same way a user searches this network. To search the network for these known torrents, Law Enforcement can quickly identify targets in their jurisdiction. Law Enforcement receives this information from "Trackers" about peers/clients on the BitTorrent network recently reporting that they are involved in sharing digital files of known or suspected child pornography, based on "info hash" SHA-1 hash values of torrents. These torrents being searched for are those that have been previously identified by law enforcement as being associated with such files.

19. There are BitTorrent network client programs which allow for single-source downloads from a computer at a single IP address, meaning that an entire file or files are downloaded only from a computer at a single IP address as opposed to obtaining the file from multiple peers/clients on the BitTorrent

9

network. This procedure allows for the detection and investigation of those computers involved in sharing digital files of known or suspected child pornography on the BitTorrent network.

20. During the query and/or downloading process from a suspect BitTorrent network client, certain information may be exchanged between the investigator's BitTorrent client program and the suspect client program they are querying and/or downloading a file from. This information includes: 1) The suspect client's IP address; 2) A confirmation from the suspect client that they have pieces of the file(s) being requested, in whole or in part, and that the pieces of the file(s) is being reported as shared from the suspect client program; and 3) The BitTorrent network client program and version being utilized by the suspect computer. Third party software available to law enforcement has the ability to log this information.

### BACKGROUND OF THE INVESTIGATION

21. On 03/07/2019 Affiant received information from Investigator Richard Warner of the Geauga County Prosecutor's Office that someone using the Internet Protocol address of 76.189.8.52 had distributed and was in possession of child pornographic material.

22. During the time period from 01/07/2019 through 02/24/2019, Investigator Warner conducted an online undercover

investigation on a Peer-to-peer (P2P) file sharing network known as BitTorrent.

23. During this investigation Investigator Warner discovered a user on this network, who was assigned IP address of 76.189.8.52, who was sharing approximately 167 megabytes of visual depictions of minors engaged in sexually explicit conduct.

24. During the time period from 01/07/2019 through 02/24/2019, Investigator Warner was able to download three (3) video files from this user. Affiant reviewed this material and discovered three video files which contained child pornography.

25. One of the video files which Affiant reviewed is described as follows:

> Complete Downloaded Material - Download #1
> Download Successfully Completed: 02/24/2019 at 03:24:07 AM
> Hash ED2k Value: ED2K:B9CF26D03DEDC5BE23F84907DF0CA503
> Hash Shaw1 Value: H55MNDBLQ67CAMII7DXRQJ5TBPEUN6WL
> File Size: 71,630,152 Bytes
>
> File Name: (Pthc) Open 33 - 9Yo & 11 Yo Girls Play With Dad's Dick.rmvb
>
> File Description: This color video is 14 minutes and 46 seconds in length. The video depicts two prepubescent while female children engaging in sexual activity with an adult male.

26. A second video file which Affiant reviewed is described as follows:

> Complete Downloaded Material - Download #2
> Download Successfully Completed: 02/20/2019 at 04:34:15 PM
> Hash Value: ED2K:66C768D72A59F1CC21DA3FF779AE74E2

11

Sha1 Value: RHITLMFWEL6RR3RWOK2TGKHRMIU2FYA2
File Size: 4,164,790 Bytes

File Name: german WhatsApp girls_14.mp4

File Description: This color video is 1 minute in length and depicts a white female child inserting a blue bottle neck into her vagina.

27. A third video file which Affiant reviewed is descried as follows:

Incomplete Download Material - Download #1
Started: 01/07/2019 at 09:03:36 AM
Last Received: 02/20/2019 at 02:46:29 PM
Hash Value: SHA1:VQTUGDX45REBWNIBAP3ZGHE5WFB4SK3M
File Size: 12,713,967 of 100,249,422

File Name: A 2018 (Pthc) Moscow-House1 - 11yo girl & 9yo boy Playing Doctor (Best Color) [29m54s].avi

File Description: This color video if downloaded completely would be 29 minutes and 54 seconds in length. The video depicts a prepubescent white male and a pubescent white female child engaging in nude dancing. The male child is observed rubbing his erect penis near the genitals of the female child from behind.

28. During the time period from 01/07/2019, at 12:00:00 GMT, through 02/26/20197, at 11:59:00 GMT, this user had been assigned an Internet Protocol (I.P.) address of 76.189.8.52.

29. During this investigation a subpoena was issued to Charter Communications, Inc. which requested the subscriber and detailed billing information regarding the customer who was assigned this I.P. address at the specified date and time.

30. On 03/22/2019, Charter Communications, Inc. complied with the issuance of the above described subpoena. This

response identified the account of Beth Jones, residing at ▓▓▓▓ ▓▓▓▓▓▓ Road, Madison, Ohio 44057. This response also indicated the account had been initially established on 06/07/2017.

31. On 04/01/2019, a query of a public information website using the biographical information of Beth Jones was conducted which revealed she resided at the above described address.

32. A search of the Lake County Auditor website was conducted which revealed the residence address located at ▓▓▓▓ ▓▓▓▓▓▓ Road, Madison, Ohio 44057 is owned by Beth Jones and Anthony Coladangelo.

33. On 04/16/2019 writer and other law enforcement officers executed a search warrant at ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Road, Madison, Ohio 44057. During this search writer discovered that Anthony V. Coladangelo had recently been asked to move out of this residence ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

34. Writer and law enforcement officers were also advised that when Coladangelo moved out of this residence he took all of his personal computers and computer hard drives with him. Writer was also advised that Coladangelo moved to ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓, East, Perry, Ohio 44081.

35. Writer and law enforcement officers subsequently interviewed Coladangelo and gained his voluntary consent to search his residence for evidence of child pornography. During

13

this search officers discovered a desktop computer and an external hard drive which contained evidence of the use of a Torrent sharing images and videos of child pornographic material. Writer also discovered file names indicative of child pornographic material.

36. During the interview of Coladangelo he admitted to downloading images and videos of child pornographic materials since 1995. He also admitted to downloading and then deleting "hundreds of videos" containing child pornographic material.

37. Based on the aforementioned factual information your Affiant respectfully submits that there is probable cause to believe that Anthony V. Coladangelo received and distributed visual depictions of real minors engaged in sexually explicit conduct in violation of Title 18, U.S.C. § 2252(a)(2).

Charles Sullivan
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence, this 16TH day of April, 2019.

David A. Ruiz
United States Magistrate Judge